IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID STEINBERG, M.D., | ) | CASE NO. 4:10CV3085 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| GOOD SAMARITAN HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 47). For the reasons discussed below, the Motion will be denied.

## FACTS

The parties' briefs (Filing Nos. 48, 53, and 58) and indexes of evidence (Filing Nos. 49, 50, 51, 52, and 59) reveal that there is no genuine dispute as to the following material facts:

David Steinberg ("Steinberg") is a physician specializing in psychiatry, and a current resident of the State of New Jersey. Good Samaritan Hospital (the "Hospital") is a Nebraska not-for-profit corporation that operates a medical facility located in Kearney, Nebraska.

In late 2008, a placement agency arranged for Steinberg to work at the Hospital's facility in Kearney, as a "locum tenens" physician–a temporary appointment. As such, Steinberg was awarded temporary privileges to provide psychiatric services to Hospital patients from December 1, 2008, through January 19, 2009. There was never a master-servant, employer-employee, or similar relationship between the Hospital and Steinberg. His placement was subject to the bylaws, rules, regulations and policies of the Hospital.

On the evening of January 10, 2009, a psychiatric patient struck Steinberg. Hospital staff who observed the incident perceived that Steinberg responded to the attack by

grabbing the patient by the hair, yelling at her, and threatening to hit her if she did not stop her assaultive behavior.  Hospital staff perceived Steinberg's actions to be improper and unprofessional.  Steinberg contends that he did not attempt to pull the patient's hair, but placed his hand behind her neck to attempt to make eye contact with her, then told her that if she hit him again he would hit her back.  Steinberg considered his actions to be medically appropriate "reality based feedback." (Declaration of David Steinberg, M.D., Filing No. 51 at 1-2.)

The Hospital revoked Steinberg's privileges effective January 10, 2009, and notified him by letter dated January 15, 2009.  Although Steinberg was not entitled to any hearing pursuant to the Hospital's bylaws, the Hospital did offer him a hearing in February, March and April 2009.  Steinberg did not accept those offers.

On or about May 2009, the Hospital filed a notice with the National Practitioner's Data Bank ("NPDB"), an internet database that can be accessed lawfully only by healthcare entities, that stated:

> Physician was awarded temporary adult and child/adolescent psychiatric privilege to provide services as a locum tenens physician from December 1, 2008 through January 19, 2009.  Physician was assigned to hospital pursuant to an agreement between hospital and a locum tenens placement company.  On January 12, 2009, the physician's temporary privileges were terminated due [to] a finding of unprofessional conduct related to physician's disruptive behavior on January 10, 2009.  Pursuant to the medical staff policy on appointment, reappointment and credentialing, the termination of temporary privileges does not entitle a physician to fair hearing and appeal procedures.  Nevertheless, prior to the hospital's required report, the physician (through his retained counsel) was offered a discretionary fair hearing, but failed to respond to the offer.  Thus, no hearing has been held and no findings of fact have been made in a hearing setting.

(Filing No. 49, Ex. H.)

The Hospital's administrators thought such a report was required under the regulations of the United States Department of Health, Education and Welfare ("HEW"), because such regulations require the reporting of any adverse action affecting physician

privileges for 30 days or more, and because Steinberg was prohibited from reapplying for privileges at the Hospital for five years.

Steinberg petitioned the Secretary of HEW to remove the report and, on or about May 29, 2012, the Secretary of HEW made an administrative determination that the report was not mandatory pursuant to the regulations governing such filings, because Steinberg's privileges at the Hospital would have expired before 30 days elapsed from the time his privileges were revoked.

Steinberg was denied positions with certain New Jersey employers because of the NPDB report. Steinberg contends that the report was filed by the Hospital administration maliciously, in retaliation for Steinberg's criticism of the Hospital administration prior to January 10, 2009. His Complaint (Filing No. 1) invokes the Court's diversity jurisdiction and asserts a single cause of action: Defamation. He seeks compensatory damages for injury to his professional reputation, embarrassment, lost income, and emotional distress, as well as exemplary damages, and he alleges that the amount in controversy exceeds $75,000.

The Hospital has moved for summary judgment, asserting that the statement in the notice was true, and that truth is an absolute defense to a defamation action. The Hospital acknowledges that Nebraska law appears to permit defamation actions to proceed where publication of a true statement was made with actual malice. The Hospital argues, however, that New Jersey law should apply; and, if Nebraska law *is* applied, that its statute–permitting defamation actions based on publication of true statements made with actual malice–is unconstitutional. Finally, the Hospital notes that it has "qualified immunity," with respect to the communication under the Healthcare Quality Improvement Act of 1986 ("HCQIA"), 43 U.S.C. § 11101, *et seq.*, but reserves that argument for a later motion. (Defendant's Brief, Filing No. 48 at 7, n.1.)

3

## STANDARD OF REVIEW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the nonmoving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion

for summary judgment.  *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'"  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## DISCUSSION

### I.  Conflict of Laws

As a court sitting in diversity jurisdiction, this Court will apply the law that the forum state, Nebraska, would apply.  See *In re Levaquin Products Liab. Litig.*, 700 F.3d 1161, 1165 (8th Cir. 2012).

In Nebraska, "[t]he first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules of different states.  Before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."  *Christian v. Smith*, 759 N.W.2d 447, 458 (2008).  "An actual conflict exists when a legal issue is resolved differently under the law of two states."  *Heinze v. Heinze*, 742 N.W.2d 465, 467 (Neb. 2007).

Steinberg asserts that Nebraska's law of defamation applies, and the Hospital asserts that New Jersey's law of defamation should apply.  Nebraska law provides:  "The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice."  Neb. Rev. Stat. § 25-840 (Reissue

2008).  New Jersey recognizes truth as a complete defense to defamation actions. *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011).

Having determined that there *is* a conflict of laws, the Court then applies the conflict-of-law rules of Nebraska, the forum state, which looks to the Restatement (Second) of Conflict of Laws (the "Restatement") for guidance. *Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 772 (Neb. 2009).  The Restatement, at § 149, provides:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 150 provides, in pertinent part:

> (1) The rights and liabilities that arise from defamatory matter in any . . . aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

Section 6 provides, in pertinent part:

> [F]actors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The notice filed by the Hospital on the NPDB internet database was an aggregate communication, accessible to health care entities in all states. Although § 150 (2) provides that "the state of most significant relationship will usually be the state where the [natural] person [claiming to be defamed] was domiciled at the time, if the matter complained of was published in that state," Nebraska was the place where the conduct causing the injury occurred, and the only place where there was any relationship between the parties. Steinberg's conduct, described by the Hospital in the allegedly defamatory notice, all occurred in Nebraska. While New Jersey may have an interest in protecting its residents from defamation, and providing them with a forum when they perceive they have been defamed, Steinberg is not seeking that protection or that forum. Nebraska has an interest in ensuring that medical practitioners working in Nebraska conduct themselves in accordance with professional standards; that unprofessional conduct is reported to the proper authorities; and that those who report such conduct truthfully are protected from adverse consequences. Nebraska also has an interest in ensuring that medical

7

practitioners working in Nebraska are not subjected to defamation.

Weighing all the factors in sections 149, 150, 6, and 145 of the Restatement, this Court concludes that the substantive law of Nebraska applies.

## II.  Truth of the Statement

The Nebraska Supreme Court described the elements of a defamation action in *Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011):

> In the ordinary case, a claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

With respect to "actionability" of a statement, the court said:  "Spoken or written words are slanderous or libelous per se . . . if they prejudice one in his or her profession or trade[.]" *Id.* at 594.  With respect to whether a statement is "false," the court noted a distinction between statements of opinion and statements of fact:

> In the context of a defamation claim, the First Amendment protects the publication of statements which cannot be interpreted as stating actual fact, but, rather, is the opinion of the author. Courts considering the distinction between fact and opinion have generally determined that making the distinction is a question of law to be decided by the trial judge.  While courts are divided in their methods of distinguishing between assertions of fact and expressions of opinion, they are universally agreed that the task is a difficult one.  The Restatement (Second) of Torts provides that a 'defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

*Id.* at 595-96 (internal quotations and citations omitted). .

The key statement in the notice issued by the Hospital reads: "On January 12, 2009, the physician's temporary privileges were terminated due [to] a finding of unprofessional conduct related to physician's disruptive behavior on January 10, 2009."  The Hospital suggests that Steinberg's action must be dismissed, because the statement in the notice

8

was true. The Hospital also argues that it cannot be responsible for any defamatory inference a reader might draw from the true statement.

It is undisputed that Steinberg's temporary appointment at the Hospital ended due to an allegation of unprofessional conduct. The actual nature of his conduct, and the question of whether such conduct failed to meet a professional standard, are in dispute. The Hospital's notice made it clear that no findings of fact were made in a "hearing setting," but indicated that a "finding" had been made in some other context.

A mere opinion that Steinberg's conduct was unprofessional likely would be protected speech. The notice, however, stated that there was a "finding of unprofessional conduct." Generally, the reference to a "finding," suggests a finding of *fact* by a court, tribunal, administrative agency, or investigator. One reading the notice would infer that Steinberg, in fact, failed to meet a standard of conduct applicable to his profession.

Exercising the judicial task of distinguishing between an assertion of fact and a statement of opinion, this Court construes the statement in the Hospital's notice to be a statement of fact. Whether or not the fact asserted was true is a question for a jury.

### III. Constitutionality of Neb. Rev. Stat. § 25-840

Neb. Rev. Stat. § 25-840 (Reissue 2008) provides that in actions for libel or slander: "The truth in itself and alone shall be a complete defense unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." The Nebraska Supreme Court has defined "actual malice" in this context as "hate, spite, or ill will." *Turner v. Welliver,* 411 N.W.2d 298, 309 (Neb. 1987).

The Hospital suggests that the statutory language is void, because it violates the First Amendment to the United States Constitution. That question, however, may not need

9

to be answered by this Court. The Hospital has stated that, if its current motion is denied, it intends to file another motion for summary judgment, raising issues of qualified immunity under federal law.[1] (Defendant's Brief, Filing No. 48, at 7, n.1.) If that subsequent motion is denied, and the matter *does* go to trial, a jury could conclude that the statement made in the notice was not "truthful," obviating the need for any jury instruction based on Neb. Rev. Stat. § 25-840, or any determination regarding the statute's constitutionality.

The Supreme Court has said, "federal courts should not prematurely resolve the constitutionality of a state statute[.]" *Growe v. Emison*, 507 U.S. 25, 32, n.1 (1993) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501(1941)). Accordingly, this Court will defer ruling on the constitutionality of Neb. Rev. Stat. § 25-840, until such time as a ruling is necessary.

IT IS ORDERED:

Defendant Good Samaritan Hospital's Motion for Summary Judgment (Filing No. 47) is denied.

. DATED this 22nd day of October, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

[1] The Court recognizes that if the Hospital were raising a defense of "qualified privilege" under common law, and were successful in such a defense, the issue of "malice" would remain to be addressed. See *Turner,* 411 N.W.2d at 308.